IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY KENNEDY,                                  :

    Plaintiff,                             :

v.                                             :     CIVIL ACTION 12-00051-KD-C

CITY OF MONROEVILLE, et al.,                   :

    Defendants.                            :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment. (Doc. 35). For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's claims against Defendants City of Monroeville, Mayor Mike Kennedy, County Commissioner Henry Childs, Monroeville Chief of Police Rudolph Munnerlyn, Officer Ronnie Pugh (incorrectly named in the complaint as "Tomie Pugh"), Officer Brian Nelms, Officer Ben Pate, and Officer Joshua Bonner be dismissed.

    I.    SUMMARY OF ALLEGATIONS

On December 6, 2009, at about 6:30 p.m., a citizen came to the Monroeville Police Department and informed Officers Pugh and Nelms that an armed robbery had occurred at the Cannon gas station. (Doc. 42 at p. 2). Officers Pugh and Nelms traveled to the Cannon gas station in their respective patrol cars, and as they approached the

scene, Nelms called out over the radio that a suspect was on foot in an area that is bordered by a dirt road with a chainlink fence topped with barbed wire. (Doc. 42 at pp. 2-3). Over the police radio, Officers Pate and Bonner heard about the robbery and drove toward the scene in their respective patrol cars. (Doc. 42 at p.3). Officer Pugh radioed that he saw the suspect, Plaintiff herein, on the dirt road. (Id.) Officer Nelms drove down the dirt road toward the suspect, while Officer Pugh began running on foot toward the suspect. (Id.) The rest of the story, for purposes of this summary judgment motion, will be told from Plaintiff's perspective.

Plaintiff climbed across the fence headed to his vehicle. (Doc. 9 at p. 4). Afterward, Officer Pugh approached with his pistol pointed at Plaintiff advising him to put his hands up. (Doc. 9 at pp. 4-5). He complied. (Id.) Then, Officer Pugh charged toward him, rammed him into the fence, snatched him back, and pushed him to the ground. (Doc. 9 at p. 8). Plaintiff asked Officer Pugh to stop because something was sticking him in the eye, but he didn't listen. (Id.) Because of the pain and fear, Plaintiff began struggling on the ground and Officer Pugh then put his knee in his back. (Id.) At that moment, Officer Nelms arrived and he assisted Pugh by putting his knees and weight into Plaintiff's back as he handcuffed him. (Id.) After they got up from his back, he saw that Officer Pate had arrived. (Id.) Officers Pugh and Nelms snatched him off the ground and sat him on the ground near the rear of a patrol car. (Id.) Officer Bonner then arrived. (Id.) They called for an ambulance and transported him to the hospital. (Doc. 9 at pp. 8-9). According to Plaintiff, he lost the vision in his right eye. (Doc. 9 at p. 9).

On February 27, 2012, Plaintiff filed the complaint that is currently before this Court. (Doc. 9). Plaintiff seeks $20,000,000 for punitive damages, mental pain and

suffering, and loss of his right eye. (Doc. 9 at p. 7). He also requests that all the officers involved be dismissed from any police force. (Id.) His claim is based upon the grounds that the officers used excessive force when arresting him in violation of his constitutional rights.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

Federal Rule of Civil Procedure 56(e) further provides:

> If a party fails to properly support an assertion of fact or
> fails to properly address another party's assertion of fact as
> required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;

> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. See Stabler v. Florida Van Lines, Inc., Civ. A. No. 11-0103-WS-N, 2012 WL 32660, at *5 (S.D. Ala. Jan. 6, 2012) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when "a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "After the nonmoving party has responded to the motion for summary judgment, the court must

grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." AGSouth Genetics, LLC v. Cunningham, No. CA 09-745-C, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011).

III. DISCUSSION

As set forth above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of his arrest on December 6, 2009. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994). For the reasons set forth below, the Court finds that Plaintiff's allegations fail to establish any constitutional violation by Defendants. Therefore, it is recommended that Defendants' motions for summary judgment be granted.

A. Plaintiffs Claims Against City of Monroeville, Mayor Mike Kennedy, and Chief of Police Rudolph Munnerlyn

Although Plaintiff named the City of Monroeville, Mayor Mike Kennedy, and Chief of Police Rudolph Munnerlyn as defendants in the caption of his complaint (Doc. 9 at p. 1) and listed Mayor Kennedy and Chief Munnerlyn as defendants in his complaint, he did not make any allegations against any of these defendants in his complaint or in any of the affidavits or responses he has filed; therefore, summary judgment is due to be granted in favor of these defendants.

B.  Plaintiffs Claim Against Monroe County Commissioner Henry Childs

Plaintiff named Monroe County Commissioner Henry Childs as a defendant in his complaint.  Although he did not make any allegations against Commissioner Childs in his complaint, he filed an affidavit in response to Commissioner Childs's Special Report in which he made the unsupported statement that the City of Monroeville Police Department is "headed by Monroeville Commissioner Defendant Henry Childs who is responsible for training their staff to comply and function within constitutional guidelines of the 8th and 14th Amendment [sic] of the United States Constitution."  Commissioner Childs submitted an affidavit in which he stated that he has no authority to nor has he had any involvement in employment, procedure, or policy decisions of the City of Monroeville Police Department.  It is undisputed that Childs was not present at the time of Plaintiff's arrest.  This Court finds that Plaintiff's unsupported statement, which is contrary to the division of responsibility in Alabama local governments, does not create a question of fact on this issue, and therefore, Commissioner Childs is also entitled to summary judgment in his favor.

C.  Plaintiff's Claims Against Officers Pate and Bonner

Although Plaintiff has named Monroeville Police Officers Pate and Bonner as defendants in this action, it is undisputed that neither of them participated in the securing of Plaintiff for his arrest or provided any direction to the arresting officers during the securing of Plaintiff.  In his complaint, Plaintiff admits that Pate and Bonner did not arrive until after the acts he complains of as excessive force occurred.  Accordingly, Defendants Pate and Bonner are entitled to summary judgment in their favor.

D. Plaintiff's Claims Against Officers Pugh and Nelms

In his complaint, Plaintiff claims that Defendants Pugh and Nelms violated his constitutional rights by using excessive force against him while arresting him. (Doc. 9 at pp. 4-5, 8-9). Although Plaintiff alleges violations of the Fifth, Eighth, and Fourteenth Amendments, this claim is properly characterized as a Fourth Amendment claim. See J.B. ex rel. Brown v. Amerson, No. 12-14546, 2013 WL 2302383 at *2 (11th Cir. May 28, 2013); Williams v. Taylor, Civ. A. No. 08-433-KD-N, 2011 WL 3861600, at *13 (S.D. Ala. Aug. 9, 2011) (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)("[w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment..."). In Graham v. Connor, 490 U.S. 386, 395 (1989), the Supreme Court held that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should by analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."

With regard to evaluating Fourth Amendment excessive force claims, the Eleventh Circuit has stated:

> The Fourth Amendment right to be free from unreasonable seizures includes the right to be "free from the use of excessive force in the course of an investigatory stop or other 'seizure' of the person." Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quotation marks omitted). "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Id. at 1266 (quotation marks omitted). The reasonableness of the force used is "judged from the perspective of a reasonable officer on the

scene, rather than with the 20/20 vision of hindsight" and "'must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" Carr v. Tatangelo, 338 F.3d 1259, 1267-68 (11th Cir. 2003) (quoting in part Graham v. Connor, 490 U.S. 386, 396-97 …(1989)).

Nicarry v. Cannaday, 260 F. App'x 166, 169-70 (11th Cir. 2007). In Graham, the Supreme Court addressed the balancing act required by the Fourth Amendment:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balance of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. … Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. … Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. …With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push of shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.

Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citations omitted).

Construing the facts in the light most favorable to Plaintiff, the amount of force used by Officers Pugh and Nelms to secure the arrest of Plaintiff does not violate the Fourth Amendment. In Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000), the Eleventh Circuit held that "[t]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Accord Amerson, 2013 WL 2302383 at *3; Woodruff v. City of Trussville, 434 F. App'x 852, 855 (11th Cir. 2011). In Woodruff, the plaintiff raised claims of unlawful arrest, excessive force, and malicious prosecution in violation of the Fourth Amendment against the City of Trussville and two police officers stemming from a traffic stop. The plaintiff alleged that one of the officers "punched him in the face, pulled him from his car, threw him to the pavement, causing him to strike his head, and handcuffed him without telling him the nature of the charges for which he was under arrest." Id. at 853. The Eleventh Circuit affirmed the district court's order granting summary judgment in favor of the defendants on each of the plaintiff's claims, stating that "[t]he kind of force alleged by Woodruff—including Adams punching Woodruff in the face, forcefully removing him from his car, and slamming him on the ground—even when construed in the light most favorable to Woodruff, constituted only de minimis force." Woodruff, 434 F. App'x at 855. See also Croom v. Balkwill, 645 F.3d 1240, 1252-53 (11th Cir. 2011) (no Fourth Amendment violation when officer forced an unarmed, physically weak, elderly woman to the ground and held her there with a foot or knee on her back for ten minutes); Nolin, 207 F.3d at 1258 (concluding that only de minimis force was used when officer grabbed the plaintiff, shoved him a few feet against a vehicle, pushed his knee into plaintiff's back, pushed plaintiff's head against the van, searched plaintiff's groin area in an

uncomfortable manner, and placed plaintiff in handcuffs, all resulting in only minor bruising); Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (no constitutional violation when officer "slammed" plaintiff against a wall, kicked his legs apart and required him to raise hands above his head); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (no Fourth Amendment violation when officer unnecessarily pushed an already-handcuffed adult male into a wall).

Viewing the facts in the light most favorable to Plaintiff, the force used by Officer Pugh and Officer Nelms was not objectively excessive under the circumstances. The officers were called to the scene of an armed robbery and found the suspect fleeing over a fence (with barbed wire on top) to get to his vehicle. According to Plaintiff, Officer Pugh told him to put his hands up, which he did. Officer Pugh then ran toward him and rammed him into the fence. He then snatched him away from the fence and pushed him to the ground. Plaintiff claims that when he was pushed to the ground something was sticking him in and under his right eye.[1] He admittedly began to struggle. Officer Pugh put his knee into Plaintiff's back, and then Officer Nelms assisted Pugh by putting his knee into Plaintiff's back to handcuff him. After handcuffing him, they stood up, snatched Plaintiff, and set him by the rear of a police car on the ground. An ambulance was called and took Plaintiff to the hospital.

In Graham, the Supreme Court stated that the proper application of the test of reasonableness under the Fourth Amendment requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

---

[1] Defendants claim that Plaintiff injured his eye climbing over the fence; however, for purposes of this summary judgment motion, the Court will consider Plaintiffs claim that his eye was injured by something on the ground as true.

whether his is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. In this case, the officers were faced with a suspect who was attempting to evade arrest for armed robbery by fleeing. This Court must judge the officers conduct from the perspective of a reasonable officer on the scene and not with 20/20 hindsight. Under the facts of this case, it would certainly have been reasonable for the officers to secure Plaintiff in the quickest and most careful way possible in light of the possibility that he may have still been armed and been a danger to them or others. Also, even though Plaintiff claims he was struggling while Officer Pugh was attempting to handcuff him out of pain and fear, there was no way for Officer Pugh to have discerned the reason for his struggling. It was certainly reasonable for the officers to have believed he was attempting to flee or reach for a weapon. The amount of force used by Officers Pugh and Nelms was clearly not excessive in this case.

There being no constitutional violation, Defendants Officer Pugh and Officer Nelms are entitled to summary judgment on Plaintiff's claim for excessive force arising out of his arrest.[2]

---

[2] In response to Plaintiff's complaint, Defendants, in the alternative, assert that they are entitled to qualified immunity. Qualified immunity protects government actors from liability, when performing discretionary functions, to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The defendant has the initial burden of proving that he acted within the scope of his discretionary authority. Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994). To determine whether a defendant acted within the scope of his discretionary authority, the court must consider whether the actions of which the plaintiff complains "(1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" Id. at 1566 (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)). Here, it is clear that Defendants Officer Pugh and Officer Nelms were acting within the course and scope of their discretionary authority as police officers in effecting Plaintiff's arrest. See Burnett v. Unified Gov't of Athens-Clarke County, Ga., 395 F. App'x 567, 568 (11th Cir. 2010) ("'[T]here can be no doubt that [the defendant police

11

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants' motion for summary judgment in their favor on any and all claims asserted against them by Plaintiff in this action is due to be **GRANTED** and hereby recommends that such claims be **DISMISSED with prejudice.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate

---

officer] was acting in his discretionary capacity when he arrested' the plaintiff.") (citations omitted).

After the defendant meets the burden of proving that he acted within the scope of his discretionary authority, the burden shifts to the plaintiff to prove that the actions of the defendant violated clearly established constitutional rights of which a reasonable person would have known. See Harlow, 457 U.S. at 818; Lassiter, 28 F.3d at 1150 n.3. As explained by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), the "threshold question" to determine whether Defendants are entitled to qualified immunity is as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendants'] conduct violated a constitutional right?" Saucier, 533 U.S. at 201; see also Siegert v. Gilley, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all"). While the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), found that the Saucier procedure is discretionary, rather than mandatory, the Court finds application of the procedure beneficial in this case. If no constitutional right was violated, the Court need not inquire further. Saucier, 533 U.S. at 201. If, however, a constitutional violation occurred, the Court must then determine whether the right was clearly established. Id. In this case, no further inquiry is needed because the Court has already concluded that no constitutional violation occurred.

Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 5th day of August, 2013.

                                                                              <u>s/WILLIAM E. CASSADY</u>
                                                                              UNITED STATES MAGISTRATE JUDGE